Melissa Siebert (*Pro Hac Vice Pending*)
Email: MSeibert@cozen.com
Erin Bolan Hines (*Pro Hac Vice Pending*)
Email: EBolanHines@cozen.com
COZEN O'CONNOR
123 North Wacker Drive, Suite 1800
Chicago, IL 60606
Telephone: 312.474.4490
Facsimile: 312.300.5645

Alexander Robinson (SBN 331187)
Email: ARobinson@cozen.com
COZEN O'CONNOR
501 W. Broadway, Suite 1610
San Diego, CA 92101
Telephone: 619.234.1700
Facsimile: 619.234.7831

Attorneys for Defendant
UKG, Inc.

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHEROKEE FREIGHT LINES STOCKTON LLC, | Case No.: 2:24-cv-01827-JDP |
| Plaintiff, | **DEFENDANT UKG, INC.'S ANSWER TO PLAINTIFF'S COMPLAINT, ADDITIONAL DEFENSES AND COUNTERCLAIM** |
| vs. | |
| UKG, INC., and DOES 1 through 20, inclusive, | Complaint Filed:    May 20, 2024 |
| Defendants. | Removed:              June 28, 2024 |

1

## ANSWER, ADDITIONAL DEFENSES AND COUNTERCLAIM

### ANSWER

Defendant UKG, Inc. ("Defendant"), through undersigned counsel, hereby submits this Answer, Affirmative Defenses, to the Complaint of Plaintiff Cherokee Freight Lines Stockton LLC ("Plaintiff"), and in support thereof, avers as follows:

### PARTIES

1.    Plaintiff, CHEROKEE FREIGHT LINES STOCKTON LLC is, and was, at all times mentioned herein, a California limited liability company ("CFL" or "Plaintiff") with its principal place of business in San Joaquin County, California.

**ANSWER:** Admitted, on information and belief.

2.    Plaintiff is informed and believes that Defendant UKG is, and all times relevant to this Complaint was, a Delaware corporation with its principal place of business in Weston, Florida, registered with the California Secretary of State, and doing business in California.

**ANSWER:** Admitted.

3.    The true names and capacities, whether individual, corporate, associate or otherwise, of Defendant DOES 1-10, inclusive, are unknown to Plaintiff who therefore sues such defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when the same have been ascertained. Plaintiff is informed and believes that each of said fictitiously-named defendants is responsible under the law in some manner, whether tortiously, negligently, in warranty, strictly, or otherwise, for the occurrences and happenings alleged herein, and that the injuries and damages alleged herein were proximately caused by such acts and/or occurrences.

**ANSWER:** UKG lacks information necessary to determine the veracity of the allegations in this paragraph 3 to admit or deny, therefore, those allegations are denied.

4.    UKG and DOES 1-10 are collectively referred to hereinafter as "Defendants."

**ANSWER:** Admitted.

5.    Plaintiff is informed and believes that Defendants, and each of them, are responsible in some manner for the occurrences and happenings herein alleged, and that Plaintiff's injuries and

2

damages as herein alleged were and are the direct and proximate result of the actions of said Defendants, and each of them. Such Defendants are sued as principals or agents, partners, servants and/or employees of such principals, or any combination thereof, and all of the acts performed by them as agents, partners, servants and/or employees were performed within the course and scope of their employment, and with the knowledge, consent, approval and ratification of such principals, and each of them.

**ANSWER:** UKG denies the allegations in the first sentence. UKG lacks information necessary to determine the veracity of the remaining allegations in this paragraph to either admit or deny, therefore, those allegations are denied. Any remaining allegations, arguments, characterizations, or suggestions are denied.

## JURISDICTION AND VENUE

6.    The Court has subject matter jurisdiction over this action and personal jurisdiction over each of the parties. All or most of the events described herein occurred in San Joaquin County, California, a location in which Defendants also do business.

**ANSWER:** UKG admits that it does business in San Joquin County and otherwise lacks knowledge or information sufficient to admit or deny the allegation in paragraph 6 of the Complaint.

7.    Venue is proper in the above-entitled Court pursuant to section 395(a) of the Code of Civil Procedure because all or most of the events or omissions which gave rise to this action occurred in San Joaquin County, the contract at issue was entered into in San Joaquin County, and the damage to Plaintiff occurred in San Joaquin County.

**ANSWER:** UKG lacks knowledge or information sufficient to admit to deny whether venue is proper under the California Code of Civil Procedure, and denies that venue is proper in California as this dispute is governed by a contract mandating litigation exclusively in Massachusetts.

## GENERAL ALLEGATIONS

8.    CFL, a national and diversified carrier of food grade commodities, had been utilizing the services of Paycom as its human resources information system ("HRIS") and payroll systems provider before deciding in May 2023 to transition those services to another provider.

**DEFENDANT UKG, INC.'S ANSWER TO PLAINTIFF'S COMPLAINT, ADDITIONAL DEFENSES AND COUNTERCLAIM**

1   **ANSWER:** UKG admits that CFL was using Paycom in May 2023 for certain payroll and
2   HR functions and in June 2023 ordered and subscribed to various specified UKG HR and payroll
3   software applications performing similar functions. UKG otherwise lacks knowledge or information
4   sufficient to admit or deny the remaining allegations in paragraph 8 of the Complaint. Those
5   remaining allegations are therefore denied.

6   9.    In connection with CFL's efforts to transition from Paycom to a new provider, CFL
7   invited UKG to offer a presentation of its services in June 2023, including an explanation as to why
8   CFL should consider transitioning such services to UKG as opposed to a different provider.

9   **ANSWER:** UKG admits that invited it to make a presentation of its software and services
10  in June including comparisons to Paycom. UKG otherwise lacks knowledge or information
11  sufficient to admit or deny the remaining allegations in paragraph 9 of the Complaint. Those
12  remaining allegations are therefore denied.

13  10.    The discussions between CFL and UKG were spearheaded by CFL Vice-President
14  Adam Karp and UKG Account Manager William Feldman. Mr. Karp made clear that CFL desired
15  to transition away from Paycom as soon as possible. In that regard, Mr. Karp inquired as to the
16  timeframe for completing the platform integrations necessary for the transition and expressed
17  serious concern over any potential for delays. During those discussions, Mr. Feldman assured Mr.
18  Karp that the timeframe for completing the platform integrations necessary to transition services
19  from Paycom to UKG would be in the range of four (4) to six (6) months, with the former timeframe
20  assuming a seamless process and the latter assuming potential snags being encountered along the
21  way. Nevertheless, Mr. Feldman assured Mr. Karp that a timeframe of 4 - 6 months would provide
22  more than sufficient time to have the UKG system ready, tested, and fully functional for a "Go-
23  Live" date of January 5, 2024 (the "Project").

24  **ANSWER:** UKG admits that William Feldman and Adam Karp's discussed objectives and
25  that Mr. Feldman expressed his belief that going live in a four-to-six-month time frame was realistic.
26  Otherwise denied.

27  11.    Relying upon Mr. Feldman's assurances, and particularly a "Go Live" date of not
28  later than January 5, 2024, CFL executed UKG's standard form 4-page "Order Form" on June 29,

4

2023, identified as Quote No. Q-176703 (the "Contract"), a true and correct copy of which is attached hereto and incorporated herein as Exhibit A, and paid a deposit to UKG in the sum of $20,000.00. The Contract includes a section entitled "Order Notes," which states: "Despite any Statement of Work linked above, UKG Launch shall be provided as set forth in the attached UKG Launch – UKG Pro Statement of Work." However, no such document was attached to the Contract or ever provided to CFL. The last paragraph of the "Order Notes" section, which is in smaller font than the preceding paragraph, states in relevant part that the Contract "is subject to and governed by the terms and conditions of UKG's Master Services Agreement located at: www.ukg.com/msa ... " (the "MSA").

**ANSWER:** UKG lacks sufficient information to admit or deny the allegations in the first sentence, other than to admit that Exhibit A is a true copy of an Order executed by the parties on June 29, 2023, and paid UKG $20,000.00 upon signing. UKG denies all remaining allegations in paragraph 11 of the Complaint.

### The On-Boarding Process

12.    UKG did not begin the "Welcome and On-Boarding" phase of the Project until July 31, 2023, a month after the Contract was executed (the "On-Boarding Phase"). The On-Boarding Phase was led by UKG Implementation Advisor Brian Yao, who utilized the UKG Launch (the "Launch") methodology on smartsheets.com to manage timelines, task assignments, and capturing requirements. UKG defines the Launch methodology as:

> UKG's Launch methodology ('Launch') provides proven and repeatable processes that are supported with UKG standard tools, templates and proven training paths that deliver a successful launch of the Subscription Services. UKG and the Customer will collaborate throughout the Launch process performing tasks such as requirements workshops, system configuration, data conversion, integration configuration, testing cycles, production support, and project management.

**ANSWER:** Denied, except to admit that the welcome and on-boarding phase of the project began on or about July 28, 2023.

13.    A portion of the Launch methodology included an "Integration Technical Questionnaire" that CFL completed as part of the information UKG required from CFL to begin the

5

**DEFENDANT UKG, INC.'S ANSWER TO PLAINTIFF'S COMPLAINT, ADDITIONAL DEFENSES AND COUNTERCLAIM**

On-Boarding Phase. Through such questionnaire, CFL provided a list of all needed vendor integrations and a sample file from each vendor. The screenshots in UKG's smartsheet.com Launch site demonstrate that CFL gathered and timely provided all such required information to UKG between July – August 2023.

**ANSWER:** UKG admits that CFL responded promptly and provided the requested information with respect to the Integration Technical Questionnaire, which was part of the Launch process. All other allegations contained in paragraph 13 are denied.

14.    The CFL leadership team, which included Mr. Karp, Phil Gill, and Robert Manetti, found the On-Boarding Phase useful and were impressed with Mr. Yao's management skills. This phase captured the tactical requirements for the Project, which were outlined in UKG's "Project Scope Summary Confirmation" document that UKG provided to CFL on July 31, 2023 (the "Project Summary"), a true and correct copy of which is attached hereto and incorporated herein as **Exhibit B.**

**ANSWER:** UKG lacks knowledge or information sufficient to admit or deny the allegations in paragraph 14 of the Complaint. The allegations are therefore denied.

15.    The Project Summary included a callout of the integrations needed and expected at the "Go Live" date. Specifically, Page 2 of the Project Summary identifies necessary "EDI Integrations" with CFL's platforms for "GL, 401k, Benefits," and "API Integrations" with CFL's platform for "Electronic Logging (drivers)," the latter of which is provided through Samsara and is used for all drivers and thus a critical component to the integration.

**ANSWER:** Denied.

16.    Consistent with the assurances provided by Mr. Feldman to Mr. Karp, Page 3 of the Project Summary identifies the "Target Live Date" as January 1, 2024, and the "First Live Check Date" as January 5, 2024. Page 6 of the Project Summary states in relevant part: "Approval of the Project Scope Summary Confirmation document confirms an understanding of the high-level project expectations including the products and services purchased as well as target live dates." Page 6 of the Project Summary further states:

1
2
3
4
5
6

As an authorized approver on the Project Leadership team, I agree with the following statements regarding the scope of the project:

- The Project Scope Summary Confirmation accurately reflects our understanding of contracted services.

- I understand that additional functionality can be added to this set of deliverables after signing; however new items cannot be guaranteed to be delivered by the stated live date. If they are required as part of the 'go-live deliverables', this could potentially impact the live date stated in this document.

7
8
9

**ANSWER:** UKG admits that dates were set as alleged and that the quoted language appears on Page 6 of the Project Summary as alleged. All allegations and characterizations not specifically admitted are denied.

10

### *UKG Fails to Make Progress and Delays the "Go Live" Date*

11
12
13
14
15
16

17.    After successfully completing the On-Boarding Phase of the Project, as outlined in the UKG Launch methodology, Mr. Yao turned the Project over to the UKG implementation team on September 11, 2023, to begin the "Implementation Phase" (the "Implementation Phase"). UKG Project Manager Jason Martini thereafter assumed management responsibilities for the Project. Unfortunately, the "Implementation Phase" was a miserable failure by UKG, as reflected through the following timeline summary of events and correspondences:

17
18
19

(a)    September 15, 2023: Mr. Martini of UKG was out of the office for the first week of the Implementation Phase, and thus handed off management of the Project during such time to one or more other UKG personnel;

20
21
22
23

(b)    September 25, 2023: The UKG implementation team began "Full Suite Analysis," which involved work that was largely duplicative of work from the On-Boarding Phase, including documentation generated during the On-Boarding Phase and captured on smartsheet.com that was not reused or referenced;

24
25
26
27

(c)    September 27, 2023: The UKG implementation team began "Initial Data Gathering," which once again involved work that was largely duplicative of work from the On-Boarding Phase, including documentation generated during the On-Boarding Phase and captured on smartsheet.com that was not reused or referenced;

28

(d)    October 4, 2024: Representatives of CFL and UKG had a conference call regarding

7

the Project, which was the first conference call that occurred since Mr. Martini assumed management responsibilities for the Project on behalf of UKG. Inexplicably, Mr. Martini began managing the Project through a Microsoft Word document that he shared during the conference call on October 4, 2024, and during future conference calls, rather than utilizing the Launch methodology as established on smartsheet.com during the On-Boarding Phase;

(e) October 9, 2024 – Nov 7, 2023: The UKG "Configuration Phase" began, and weekly Project meetings led by Mr. Martini continue to be run from the Microsoft Word document referenced above, without any tangible tracking or accountability, while the UKG Launch methodology platform on smartsheet.com continued to not be utilized;

(f) November 7, 2023: Mr. Gill of CFL expressed CFL's concerns regarding Mr. Martini to UKG Account Manager William Feldman by email, highlighting the primary concern that Mr. Martini's mismanagement is leading to delays and misinformation with the integrations, specifically with the Samsara integration which will handle the timekeeping for drivers and which is critical for CFL's success. Unfortunately, UKG failed to address CFL's concerns or propose any form of resolution;

(g) November 28, 2023: Sherrell Davis of UKG reported for the first time that all integrations other than the 401k integration will not be available until June 2024, and further reported that the 401k integration will "likely" be available in late January 2024.

(h) November 29, 2023: UKG confirmed at the Project meeting that UKG will be unable to provide integrations by the previously stated "Go Live" date of January 5, 2024;

(i) November 30, 2023: Mr. Manetti of CFL made clear to UKG that the "Go Live" date cannot proceed without 401k integration proven to be working ahead of such date, and in response UKG requested that CFL pay for such integrations. Such request was not only inconsistent with all prior discussions and UK.G's own Project Summary, but was never even previously mentioned as a possibility when CFL outlined the

8

**DEFENDANT UKG, INC.'S ANSWER TO PLAINTIFF'S COMPLAINT, ADDITIONAL DEFENSES AND COUNTERCLAIM**

needed integrations. UKG advised CFL that the charge for such ten (10) integrations would start at $2,000.00 each, although in response to CFL's concerns UK.G agreed to reduce such charge to $5,000.00 total for all the integrations;

(j)   December 7, 2023: UKG's Senior Manager of Professional Services Consulting, Pam Christman, sent an email to CFL offering better costs and timelines, which CFL is informed and believes was the result of CFL expressing its concerns regarding UKG's failure to perform under the Contract;

(k)   December 8, 2023: Mr. Martini and Ms. Christman sent a joint email on behalf of UKG identifying a revised timeline for all integrations to be completed, and presented options for a revised "Go Live" date, with the only viable option for full integration delaying the "Go Live" date to July 2024. Mr. Karp responded by email of the same date on behalf of CFL, stating:

> This new July, 2024 go live date is not going to work for us and we've already been very clear in our position that we won't be able to go live without a fully functioning system. This leaves us in a terrible spot as neither option below are viable options for us. This is why we need to speak ASAP to discuss if, how we move forward. I was hoping we could have talked earlier today. In light of the options provided below, we're now on hold on our side. Please let the UKG team know to hold off any meetings that were previously scheduled until we decide next steps.
>
> Please let me know as soon as you guys are available for a call.

Ms. Christman responded to Mr. Karp by email of the same date, stating: "My Director and I are available to meet with you at 4:00 or 4:30 PST - would that work? Otherwise, Jason we will look to move up the call early next week. Please advise."

(l)   December 11, 2023: Representatives of UKG (David Canup and Pam Christman) participated in a conference call with representatives of CFL (Adam Karp and Phil Gill) and represented to CFL's representatives that the Project is on time and on track and that UKG's services are ready for "Go-Live" in January 2024. During such call, CFL's representatives reiterated that integrations are a vital component of the system's efficacy, as UKG itself documented in the Project Summary. UKG's

9

**DEFENDANT UKG, INC.'S ANSWER TO PLAINTIFF'S COMPLAINT, ADDITIONAL DEFENSES AND COUNTERCLAIM**

representatives responded by stating that the integrations were never part of the Contract, while CFL asserted to the contrary and reiterated that such integrations were specifically discussed throughout the entire process, including prior to entering into the Contract, and that UKG was clearly aware of the need for the integrations and the fact they are critical for a successful launch. Mr. Karp also suggested during the conference call that the parties simply part ways, which UKG resisted and requested that CFL provide a formal letter in such regard;

(m)    December 15, 2023: Mr. Karp sent an email on behalf of CFL to Mr. Canup, stating:

> Thank you for the time on our call earlier this week.
>
> As you suggested, I am writing to express our interest to work through the steps needed to terminate our business relationship. I wanted to provide you with a brief background and summary why we made the decision originally to move to UKG as I feel that's important to our position today. Then propose a potential quick resolution.
>
> We ultimately entered into an agreement with UKG based on the assurance that UKG would deliver a complete system ready for launch in January 2024, alongside an ongoing service and product experience we could rely on. This commitment was a significant factor in our decision to collaborate with UKG.
>
> Originally, our PAYCOM system was meeting CFL's core needs. However, despite PA YCOM's operational efficacy, the service aspect led to our decision to seek a new partner. When we transitioned to UKG, we were assured of a service experience far superior to what we had previously encountered. Unfortunately, our experience with UKG has not lived up to these assurances. We are currently facing a six-month delay for go-live, incurring additional time and financial costs. This situation has regrettably eroded our confidence in the promised service experience following the launch.
>
> In the interest of both parties, we propose to negotiate a good faith separation. In the hopes of a quick resolution, CFL is willing to forego any credit or refund of the $20,000 already invested in UK.G's LAUNCH professional services, recognizing the efforts made thus far. Regarding the subscription service, we seek to terminate the agreement before its commencement.
>
> Our goal is to resolve this situation swiftly and amicably. We are open to discussing the most effective way to conclude our agreement and are ready to engage in discussions at your earliest convenience.

10

**DEFENDANT UKG, INC.'S ANSWER TO PLAINTIFF'S COMPLAINT, ADDITIONAL DEFENSES AND COUNTERCLAIM**

> We understand that this decision is not ideal for either party. However, we believe that an amicable and efficient resolution is in our mutual best interest.
> We look forward to your response and hope to find a path that minimizes inconvenience and fosters goodwill between our companies.

(n)    December 27, 2023: After not receiving any response from UKG to his email of December 15, 2023, Mr. Karp sent a further email to Mr. Canup, stating: "I wanted to follow up to get your thoughts on the proposed resolution below. Please let me know what you think about resolving this amicably."

(o)    December 28, 2023: After still not receiving any response from UKG, Mr. Karp sent a further email to Mr. Canup, stating:

> I wanted to follow up once more to see how you feel about the below resolution proposal. I've copied Pam in case you are out of the office as I haven't heard back from you. We do need to bring this to a resolution and as stated below, we are hoping we can resolve this smoothly. If the below is not something UKG is open to for some reason, let me know as we'll then need to take the next steps to try and resolve this as easily as possible.

(p)    December 29, 2023: Mr. Canup responded to Mr. Karp, stating: "I apologize for the delay. I will follow up with my internal teams on Tuesday. Would you have time to meet next week so I can give you updates? Please let me know your availability." Mr. Karp responded by email of the same date, stating:

> At this point my schedule is open Wednesday after 1:00pm PST. If you'd like to schedule a call, let me know what time Wednesday afternoon will work best for you.
>
> Have a great New Year and I look forward to talking to you next week in the hopes we can reach a quick resolution.

(q)    January 10, 2024: Mr. Karp sent an email to Mr. Canup, again with a copy to Ms. Christman, stating: "I haven't heard from anyone at UKG regarding the resolution of this. I believe you anticipated I would hear something Monday or Tuesday. Please let me know when I can expect to hear something as we'd clearly like to get this resolved and behind us."

(r)    January 11, 2024: Mr. Canup responded to Mr. Karp by email, stating: "Adam, I will

11

**DEFENDANT UKG, INC.'S ANSWER TO PLAINTIFF'S COMPLAINT, ADDITIONAL DEFENSES AND COUNTERCLAIM**

1    be able to follow up with this today."

2    (s)    January 12, 2024: Mr. Karp sent an email to Mr. Canup, again with a copy to Ms.

3    Christman, stating: "I still haven't heard anything on this."

4    (t)    January 16, 2024: Mr. Karp sent a further email to Mr. Canup, again with a copy to

5    Ms. Christman, stating:

6    As of today, I still have not heard from anyone with a
confirmation of what we've discussed regarding terminating
7    our contract. I sent you our termination request, with a
proposal as you requested back on December 15th. I have
8    followed up several times and haven't been able to get this
resolved. We spoke on Friday and you apologized again for
9    the continued delay and let me know you would email me with
the contact information of the person that you mentioned I will
10    need to talk with for the termination confirmation (I believe
you mentioned his name was Tim?). I haven't received that
11    email, or been contacted by anyone else at UKG.

12    When you and I talked, we both agreed it would be best to end
things on as much of a positive note as possible. Yet, I can't
13    seem to get an official confirmation from you, or anyone else
at UKG. Unfortunately, I can't keep waiting. If I can't get
14    some type of confirmation by the end of this week that what I
proposed back on December 15th is agreeable, I will have no
15    choice, but to escalate this and look to terminate based on
cause due to the various shortcomings by some of the UKG
16    team during this process that led to this project falling short of
what we were promised. If we're forced to go that route, we
17    will be seeking a return of all our costs. I'm still hoping we
can avoid this, but will need an official response by the end of
18    this week.

19    Please let me know UKG's position ASAP.

20    (u)    January 17, 2024: Nikki Aitken, a new UKG customer service representative, entered

21    the picture and emailed Mr. Karp, with a copy to Ms. Canup and Ms. Christman,

22    stating:

23    Hi Adam – thank you for the follow up, and I apologize for
the delay. We're still trying to get caught up on customer
24    requests that came in over the holidays/year-end, but David
did pass this along as soon as you made us aware of your intent
25    to terminate the partnership. Can we schedule some time to
connect next week? I'm out of the office tomorrow and just
26    want to ensure I have all of the contract details and history on
the project before we meet. Let me know what suits and we'll
27    get something on the calendar.

28    Mr. Karp responded to Ms. Aitken by email of the same date, stating:

12

**DEFENDANT UKG, INC.'S ANSWER TO PLAINTIFF'S COMPLAINT,**
**ADDITIONAL DEFENSES AND COUNTERCLAIM**

1
2
3
4
5

> I was told we were already past the discovery phase and the need for UKG to now look into the contract details and history on the project. This has been lingering for over a month without an answer and we need to reach a resolution one way or another. I was told that I was just waiting for a final confirmation from the right department that what I proposed was agreeable. Will you be able to provide a final official answer when we speak next week?

6

> I'm available Monday between 9am-12:00pm PST.

7
8
9
10
11
12

Ms. Aitken responded by email of the same date, stating: "Hi Adam – yes, I will be able to provide an answer when we meet next week. Can you propose a time for Wednesday or Thursday? I need a couple of days internally to pull together the contract details and meet with the project team." Mr. Karp responded by email of the same date, stating: "I can make myself available Wednesday from 9:00am-12:00pm PST."

13
14
15

(v)     January 25, 20224: After several weeks of nudging and fruitless negotiations, UKG demanded a year's payment to terminate the Contract. By email to Mr. Karp on January 25, 2024, Ms. Aitken stated on behalf of UKG:

16
17
18
19
20

> Hi Adam – thank you for taking the time to speak with me yesterday. As we discussed yesterday, UKG is not aligned to the proposal Cherokee has set forth, which is to end the partnership and forgo all subscription fees, considering the $20,000 Launch fees that have already been paid Cherokee's only financial obligation. UKG remains committed to delivering the project as scoped; if Cherokee wishes to terminate the relationship prior to fulfillment of the initial contract term, we will seek additional payment of one year of the subscription fees, totaling $115,200.

21
22
23

> I realize what the likely next steps are based on our conversation, and I am already engaged with our legal counsel on that front. Please let me know how you would like to proceed.

24
25
26
27

**ANSWER** UKG admits that the Project was received by the implementation team in mid-September, 2023 to begin the Implementation Phase and that Mr. Martini was the point person responsible to manage implementation. All allegations and characterizations not specifically admitted are denied.

28

**DEFENDANT UKG, INC.'S ANSWER TO PLAINTIFF'S COMPLAINT, ADDITIONAL DEFENSES AND COUNTERCLAIM**

*CFL Sends UKG a Notice of Intent to Terminate for Cause*

18.    Section 7.2.2 of the MSA states in relevant part:

> 7.2.2 For Cause. Either Party may terminate this Agreement, or any Service identified in an Order, if the other Party fails to perform any material obligation under this Agreement, and such Party is not able to cure the non-performance within thirty (30) days of written notice of such default with reasonably sufficient detail regarding the alleged breach ... .

**ANSWER:** UKG states that the MSA speaks for itself, and admits that a portion of Section 7.2.2 is accurately quoted. Any other allegations and characterizations not specifically admitted are denied.

19.    By written correspondence dated February 22, 2024, by and through its legal counsel, CFL sent a "Notice of Intent to Terminate for Cause" to UKG, a true and correct copy of which is attached hereto and incorporated herein as Exhibit C (the "Termination Notice"). The Termination Notice states in relevant part:

> [A]lthough CFL disputes the validity and enforceability of the MSA, CFL is willing to provide UKG with an opportunity to cure the breaches and/or anticipatory breaches identified above pursuant to Section 7.2.2 of the MSA, and CFL does so strictly for the purpose of this correspondence and without in any way, expressly or impliedly, waiving such position. If UKG is not willing or able to timely cure such issues, the Contract will be deemed terminated pursuant to Section 7.2.2 of the MSA.

**ANSWER:** UKG admits that it received the document attached to the Complaint as Exhibit C, which speaks for itself. UKG denies any inference that the letter constituted a proper notice of termination, denies the assertions of breach set forth therein, and denies that said letter provided any meaningful opportunity to "cure" as it raised issues and demands beyond the scope of UKG's contractual obligations. All allegations and characterizations not specifically admitted are denied.

20.    The Termination Notice, which addressed UKG's failure to perform with respect to the Project's "Go Live" date and CFL's concerns regarding recently discovered data breaches that impacted UKG customers, made clear that the Contract would be deemed terminated if UKG failed to perform and provide the assurances requested by CFL within thirty (30) days of UKG's receipt of the Termination Notice. UKG failed to perform under the Contract, failed to provide the

14

assurances requested by CFL, on or before such 30-day deadline, and refused to acknowledge CFL's proper termination of the Contract.

**ANSWER:** UKG admits that the document attached to the Complaint as Exhibit C, which speaks for itself; erroneously asserted a failure to perform; asserted purported concerns regarding data security that were unwarranted and did not call into question UKG's ability to perform; and sought alleged "assurances" regarding same. UKG denies any inference that the letter constituted a proper notice of termination, denies the assertions of breach set forth therein, and denies that said letter provided any meaningful opportunity to "cure" as it raised issues and demands beyond the scope of UKG's contractual obligations. All allegations and characterizations not specifically admitted are denied.

<u>**CAUSES OF ACTION**</u>

<u>**FIRST CAUSE OF ACTION**</u>

**(Breach of Contract – Against Defendant UKG)**

21.    Plaintiff realleges and incorporates herein the allegations set forth in Paragraphs 1 through 20, as though fully set forth herein.

**ANSWER:** UKG restates as if incorporated fully herein its answers in paragraphs 1-20, *supra*.

22.    Defendant breached the Contract by failing to have the UKG system ready, tested, and fully functional for a "Go-Live" date of January 5, 2024, and – setting aside CFL's position that the MSA was not properly incorporated into or otherwise part of the Contract – by failing to perform and provide the assurances requested by CFL within thirty (30) days of UKG's receipt of the Termination Notice.

**ANSWER:** Denied.

23.    Plaintiff has performed all terms and conditions of the Contract required on its part to be performed, except those terms and conditions for which performance has been excused as a result of the conduct of UKG.

**ANSWER:** Denied.

**DEFENDANT UKG, INC.'S ANSWER TO PLAINTIFF'S COMPLAINT, ADDITIONAL DEFENSES AND COUNTERCLAIM**

24.    Plaintiff has incurred, and will continue to incur, damages, including, but not limited to, wages and other expenses incurred in connection with the Project, and a down payment of $20,000.00 paid by Plaintiff to UKG.

**ANSWER:** Denied.

### SECOND CAUSE OF ACTION

**(Unfair Competition/Cal. Bus. & Prof. Code, §§ 17200, *et seq.* – Against All Defendants)**

25.    Plaintiff realleges and incorporates herein the allegations set forth in Paragraphs 1 through 24, as though fully set forth herein.

**ANSWER:** UKG restates as if incorporated fully herein its answers in paragraphs 1-24, supra.

26.    In connection with the Contract and the Project, Defendants engaged in a series of unlawful, unfair, and fraudulent business acts and practices in violation of the California Unfair Competition Law ("UCL"), California Business and Professions Code sections 17200 *et seq.* Specifically, as alleged herein, Defendants made false promises and other assurances to Plaintiff, including assurances of a "Go Live" date of not later than January 5, 2024, all in furtherance of inducing Plaintiff to enter into the Contract. After Plaintiff agreed to enter into the Contract, Defendants provided Plaintiff with UK.G's standard form 4-page "Order Form," which Plaintiff executed on June 29, 2023, although Defendants failed to provide Plaintiff with various documents that Defendants now assert are part of the Contract. Specifically, although the Contract states that the "UKG Launch – UKG Pro Statement of Work" was attached thereto, no such document was attached or ever provided to Plaintiff. In addition, UKG included a section in the Contract in small font stating that the Contract "is subject to and governed by the terms and conditions of UK.G's Master Services Agreement located at: www.ukg.com/msa ... ," although UKG failed to call such section to CFL's attention or ever provide CFL with a copy of the MSA. The MSA, which Plaintiff contends is not binding or enforceable, includes various provisions, including a provision – which is unlawful and unenforceable under California law – providing for exclusive venue in Massachusetts for any disputes arising from the Contract.

**ANSWER:** Denied.

27.     Plaintiff is informed and believes that Defendants engaged, and continue to engage, in the practices alleged herein so as to unlawfully and/or unfairly increase their leverage in disputes arising from UKG's failure to perform and corresponding customer demands for contractual termination.

**ANSWER:** Denied.

28.     The wrongful conduct of Defendants, as alleged above, constitutes unlawful, unfair, and fraudulent business acts and practices in violation of the California Unfair Competition Law ("UCL"), California Business and Professions Code sections 17200 *et seq.*

**ANSWER:** Denied.

29.     California Business and Professions Code section 17203 authorizes injunctive and restitutionary relief against any person who has engaged or proposes to engage in unfair competition. Unless and until enjoined, Defendants, and each of them, will continue to engage in the unlawful, unfair and deceptive business practices alleged herein.

**ANSWER:** Denied.

30.     As a direct and proximate result of Defendants' statutory unfair competition, Defendants have been unjustly enriched and are subject to disgorgement in an amount to be determined at trial.

**ANSWER:** Denied.

31.     Plaintiff requests that the Court issue injunctive relief against Defendants and their agents, servants, employees, and all persons acting thereunder, in concert with or on their behalf.

**ANSWER:** UKG asserts that no relief against it is appropriate. To the extent any allegation is made in Paragraph 31, the allegation is denied.

## THIRD CAUSE OF ACTION

### (Declaratory Relief – Against UKG)

32.     Plaintiff realleges and incorporates herein the allegations set forth in Paragraphs 1 through 31, as though fully set forth herein.

**ANSWER:** UKG restates as if incorporated fully herein its answers in paragraphs 1-31, *supra.*

33.     This Court is authorized to grant declaratory judgments.

**ANSWER:** This paragraph sets forth nothing more than legal conclusions and labels to which no response is required. To the extent any facts are alleged, UKG admits that this Court has the power to declare the parties' rights and obligations with regard to the Contract.

34.     An actual controversy exists between CFL and UKG relative to the rights and duties under the Contract, including, but not limited to, CFL's termination of the Contract, the validity and enforceability of the MSA, and the failure of UKG to perform.

**ANSWER:** Admitted.

35.     Plaintiff desires a judicial determination, which is necessary and appropriate at this time, as to the issues set forth above, and such a judicial declaration is necessary and appropriate at this time under the circumstances so that CFL and UKG may determine their respective rights and remedies against each other under the Contract and MSA.

**ANSWER:** This paragraph sets forth nothing more than legal conclusions and labels to which no response is required. To the extent any facts are alleged, UKG admits and alleges that a judicial determination of the rights and obligations of the Parties is desirable, necessary and appropriate so that CFL and UKG may determine their respective rights and remedies against each other under the Contract and MSA.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1.     For compensatory damages;

2.     For injunctive relief to enjoin the unlawful and/or unfair business practices deployed by Defendants;

3.     For an award to Plaintiff of all amounts by which Defendants have been unjustly enriched, including without limitation Defendants' profits attributable to Defendants' unauthorized conduct;

4.     For reasonable attorneys' fees as allowed by law or contract;

5.     For an award to Plaintiff of prejudgment interest as provided by law; and

6.     For such other relief as the Court may deem just and proper.

**ANSWER TO PRAYER FOR RELIEF:** Denied. The demand for relief does not contain any factual allegations the require a response. To the extent any response is required, UKG denies that Plaintiff is entitled to any relief whatsoever, as requested by the causes of action or otherwise.

## <u>AFFIRMATIVE DEEFENSES</u>

UKG asserts the following additional substantive and procedural defenses and, in so doing, does not concede that any such defenses are affirmative defenses on which it bears the burden of proof:

### FIRST AFFIRMATIVE DEFENSE
### (Failure to State a Cause of Action)

As a first, separate and distinct affirmative defense, Defendant alleges that the Complaint in its entirety fails to state facts sufficient to constitute a cause of action as against Defendant.

### SECOND AFFIRMATIVE DEFENSE
### (Failure to Perform Under the Contract)

As a second, separate and distinct affirmative defense, Plaintiff's claims are barred in whole or in part by its own failure to perform the Contract.

### THIRD AFFIRMATIVE DEFENSE
### (Massachusetts Choice of Law and Forum Selection)

As a third, separate and distinct affirmative defense, Plaintiff has brought this claim in California, and purports to assert claims under California law, in contravention of the Contract, which provides in the MSA as follows:

> **Jurisdiction & Dispute Resolution**. This Agreement is governed by and is to be interpreted solely in accordance with the laws of the Commonwealth of Massachusetts, without regard to any conflict of law provision that would result in the application of a different body of law, and each Party agrees to submit to exclusive venue in the courts in Boston, Massachusetts in any dispute arising out of or relating to this Agreement.

//

//

**DEFENDANT UKG, INC.'S ANSWER TO PLAINTIFF'S COMPLAINT,
ADDITIONAL DEFENSES AND COUNTERCLAIM**

**FOURTH AFFIRMATIVE DEFENSE**

**(Contractual Limitations)**

As a fourth, separate and distinct affirmative defense, Plaintiff's damages are subject to limitations as set forth in the MSA, including but not limited to Article IX thereof.

**FIFTH AFFIRMATIVE DEFENSE**

**(Waiver/Estoppel)**

As a fifth, separate and distinct affirmative defense, Defendant alleges that the Complaint, and each purported cause of action therein, is barred, in whole or in part, to the extent the doctrines of waiver and/or estoppel apply.

**SIXTH AFFIRMATIVE DEFENSE**

**(Estoppel or Res Judicata)**

As an sixth, separate and distinct affirmative defense, Defendant alleges that the Complaint, and each purported cause of action therein, is barred, in whole or in part, to the extent the doctrines of estoppel or res judicata apply.

**SEVENTEENTH AFFIRMATIVE DEFENSE**

**(Unclean Hands)**

As a seventeenth, separate and distinct affirmative defense, Plaintiff's claims are barred, in whole or in part, by the doctrines of waiver, estoppel, and unclean hands.

**EIGHTEENTH AFFIRMATIVE DEFENSE**

**(Estoppel or Res Judicata)**

As an eighteenth, separate and distinct affirmative defense, the breached alleged did not entitle Plaintiff to repudiate the Contract.

**<u>COUNTERCLAIM</u>**

**<u>Parties</u>**

1.      The Counterclaim Plaintiff, UKG, Inc. ("UKG") is a corporation with headquarters in Weston, Florida and substantial operations and administration in Lowell, Massachusetts.

**DEFENDANT UKG, INC.'S ANSWER TO PLAINTIFF'S COMPLAINT, ADDITIONAL DEFENSES AND COUNTERCLAIM**

2.      The Counterclaim Defendant, Cherokee Freight Lines Stockton, LLC ("CFL"), is a limited liability company corporation organized under California law and headquartered in Stockton, California, doing business as CFL Logistics (hereafter, "CFL").

**Factual Background**

3.      UKG is a developer and provider of cloud-based workforce and human capital management solutions for business, including valuable human resources, tax and payroll management software. UKG generates revenue from its products by charging a combination of service activation fees (or "launch fees"); recurring monthly subscription fees; and other service fees for specific additional transactions and services.

4.      CFL is a trucking services company maintaining a fleet of more than 300 trucks, and holds itself out as a national, diversified carrier of food grade commodities.

5.      On or about June 29, 2023, UKG and CFL entered into a written agreement whereby CFL ordered specified suite of UKG software applications and professional services to assist CFL in implementing the software (the "Order"). The Order expressly incorporated the terms and conditions of a Master Services Agreement referenced in the order (the "MSA"). The Order and MSA are referred to herein collectively as the "Agreement."

6.      Pursuant to the Order, CFL agreed to pay a Launch Fee of $20,000.00 and, beginning in May 2024, monthly subscription fees totaling at least $9,279.94 for the initial term of 36 months. To the extent that CFL employed more than 320 employees, the subscription fees would increase accordingly.

7.      After executing the Order, the Parties engaged in a collaborative implementation process, in which the parties assessed and execute tasks required to migrate from CFL's then-existing payroll and workforce management system onto the UKG software. Through that process, they targeted January 1-5, 2024, as the date on which CFL would begin using the UKG software. This was understood to be a target date that was subject to reasonable change and not a binding contractual commitment.

**DEFENDANT UKG, INC.'S ANSWER TO PLAINTIFF'S COMPLAINT, ADDITIONAL DEFENSES AND COUNTERCLAIM**

8.    Through the above launch planning process, the parties identified several "integrations" – that is, processes involving third parties such as employee benefits vendors and employee tracking interfaces through which time of work is tracked – that CFL required.

9.    UKG was ready, willing and able to configure the integrations provided it received timely data and formatting from CFL and/or its third-party vendors. That did not occur in time to build all of the integrations in time for the targeted "Go Live" date.

10.    UKG made a number of proposals to CFL that would enable CFL to go live and then add the integrations over time and was ready, willing and able to build a number of the integrations with only minor time adjustments.

11.    On or about December 11, 2023, CFL informed UKG that it would not "go live" with the UKG system without having in place all four of its desired integrations, and requested to terminate the Agreement. UKG declined and offered a revised Go Live date of February 1, 2024 including two of the four outstanding integrations, with the others to be added thereafter. CFL declined to cooperate in any further work in advancing the project.

12.    On or about February 22, 2024, CFL's counsel transmitted a demand letter to UKG, purporting to provide a notice of termination and thirty-day right to cure. The letter was pre-textual as it was based on the false premise that there was a firm contractual go live date, including all integrations, as of January 1, 2024. Further, as was well known to CFL, UKG could not then configure the integrations without additional information and cooperation from CFL and its vendors, which CFL was not offering to supply. Finally, CFL raised other issues extraneous to the contract, erroneously suggesting that there were data security issues with the Products based on a well-publicized data breach/ransomware attack affecting some UKG systems totally distinct from those employed with respect to the products and services for which CFL contracted.

13.    As such, CFL has definitively repudiate its obligations under the Contract.

14.    On or about May 20, 2024, CFL commenced suit against UKG in the Superior Court of San Joaquin County, California, seeking damages and a declaration of the parties' continuing rights and obligations under the Contract.

**DEFENDANT UKG, INC.'S ANSWER TO PLAINTIFF'S COMPLAINT, ADDITIONAL DEFENSES AND COUNTERCLAIM**

15.     In so doing, CFL breached the Agreement, and specifically Section 10.1 of the MSA, under which CFL agreed "to submit to the exclusive venue in the courts in Boston, Massachusetts in any dispute arising out of or relating to this Agreement."

## COUNT 1

### (Breach of Contract)

16.     UKG repeats and alleges as if set forth fully herein the allegations contained in Paragraphs 1-15 above.

17.     UKG and CFL are parties to the Agreement, entered into for good and valuable consideration.

18.     CFL has permanently and irrevocably repudiated its obligations under the Agreement and, to date, has breached the Agreement by failing to pay subscription fees beginning in no later than April 1, 2024 as provided on the Order.

19.     CFL does not have proper cause to terminate the Agreement.

20.     UKG has not materially breached the Agreement. It has invested significant time and resources to implement the contracted software for CFL and stood ready, willing and able to perform.

21.     UKG has suffered damage as a consequence of CFL's breach, including the loss of profits from the subscription fees due under the Agreement for the initial term of three years.

22.     UKG has also suffered damage – the cost of moving to dismiss or transfer this case – as a result of CFL's filing of this action in California in breach of its agreement to submit all disputes exclusive in Boston, Massachusetts.

## COUNT 2

### (Declaratory Relief)

23.     UKG repeats and alleges as if set forth fully herein the allegations contained in Paragraphs 1-22 above.

24.     An actual controversy exists concerning the rights and obligations of the parties with respect to the Agreement's continued force and effect.

**DEFENDANT UKG, INC.'S ANSWER TO PLAINTIFF'S COMPLAINT,
ADDITIONAL DEFENSES AND COUNTERCLAIM**

25.     CFL has communicated in writing to UKG that it "will not be making any further payments to UKG and considers the August 31, 2022 agreement between the parties rescinded as a result of UKG's repeated material misrepresentations during the sale process and again prior to the kickoff of the requirements gathering phase of implementation."

26.     UKG made no such misrepresentations and CFL has no right to rescind the Agreement.

27.     UKG seeks as declaration that CFL had and has no right to rescind the Agreement, or to terminate the Agreement for material breach, and that its purported rescission is without effect.

### **Prayers for Relief**

WHEREFORE, UKG, Inc. respectfully prays that this Court grant the following relief:

1.     On Count 1, enter judgment awarding UKG Inc. its damages arising from CFL's breach of the Agreement, together with its costs and pre-judgment interest;

2.     On Count 2, enter judgment declaring that CFL was not and is not entitled to rescind or terminate the Agreement, and awarding UKG Inc. its costs; and

3.     Grant such further relief as the Court deems just and proper.

DATED: August 5, 2024

Respectfully submitted,


By:     */s/ Alexander E. Robinson*
Melissa Siebert
Erin Bolan Hines
Alexander Robinson

Attorneys for Defendant
UKG, Inc.

24

## CERTIFICATE OF SERVICE

At the time of service, I was over 18 years of age and not a party to this action. My business address is 501 West Broadway, Suite 1610, San Diego, CA 92101; sbutterworth@cozen.com.   On the date indicated below, I served the following document(s):  **DEFENDANT UKG, INC.'S ANSWER TO PLAINTIFF'S COMPLAINT, ADDITIONAL DEFENSES AND COUNTERCLAIM**

I served the above document(s) on the following person(s):

| | |
|---|---|
| Anthony L. Vignolo<br>**DOWNEY BRAND LLP**<br>3425 Brookside Road, Suite A<br>Stockton, California 95219 | *Attorney for Plaintiff, Cherokee*<br>*Freight Lines*<br>*Stockton LLC*<br>Tel.: 209.473.6450<br>Fax: 209.473.6455<br>E-mail:<br>avignolo@downeybrand.com;<br>jwilliams@downeybrand.com;<br>pmatusek@DowneyBrand.com;<br>bstockman@DowneyBrand.com |

The documents were served by the following means:

☒    **BY ELECTRONIC FILING.**  I am familiar with the United States District Court, Eastern District of California's practice for collecting and processing electronic filings.  Under that practice, documents are electronically filed with the Court.  The Court's CM/ECF system will generate a Notice of Electronic Filing (NEF) to the filing party, the assigned judge, and any registered users in the case.  The NEF will constitute service of the document.  Registration as a CM/ECF user constitutes consent to electronic service through the Court's transmission facilities.

☒    **FEDERAL:** I declare under penalty of perjury that the foregoing is true and correct, and that I am employed at the office of a member of the bar of this Court at whose direction the service was made.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed at San Diego, California on **August 5, 2024**.

By: */s/Sally Butterworth*

Sally Butterworth